

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 11, 2018**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| THE TERRILL MANUFACTURING | § | Case No: 16-60105-rlj-7 |
| COMPANY, INC., | § | |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION AND ORDER

This chapter 7 case resulted from The Terrill Manufacturing Company, Inc.'s ("Terrill") failed attempt to reorganize under chapter 11. Counsel for Terrill—Reedy Spigner, Spigner & Associates, P.C. ("Spigner")—now seeks approval of the fees and expenses incurred by Terrill during the chapter 11 proceeding. The United States Trustee ("UST") objects to Spigner's request and opposes approval of any of the requested fees.

Spigner's application seeks approval of $54,121.12, including $48,723.83 in fees and $1,777.00 in expenses. Doc. No. 182. (The actual costs, apparently, are $5,397.29, as itemized in Exhibit A to the application.) Spigner requests payment of $39,000.00 that is held in a retainer that was put-up before the case was filed.

1

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The UST argues that the Court should not award any fees here as this case was hopeless from the outset and never had any prospect to reorganize. Plus, the routine, albeit critical, requirements of chapter 11—correct disclosure of the source of the retainer, accurate schedules and statement of financial affairs, proper management of cash and bank accounts—were not followed. Spigner does not dispute the many shortcomings and deficiencies alleged by the UST. He argues, however, that the time expended for services is accurate, reasonable under the circumstances, and, given that the retainer is from non-estate funds, that he should be paid at least the $39,000 held in the retainer.

## I.

The Court, on December 16, 2016, at the conclusion of a two-day hearing on the UST's motion for conversion to chapter 7 (or dismissal or appointment of a chapter 11 trustee), ordered that this case be converted to chapter 7. In doing so, the Court found as follows:

- that the evidence was "overwhelming" that conversion was required

- that Terrill had not had any operations since the filing of the case and that the number of employees had gone from forty-five to four

- that Terrill had claimed to have at least $1.6 million in outstanding accounts receivable, but only had approximately $30,000 in-hand

- that Terrill had failed to open-up a debtor-in-possession account and, indeed, there was no evidence of any bank account at the time of the hearing

- that there was no evidence of Terrill's ability to reorganize and, in effect, reestablish its business

- that Terrill's evidence of a potential source of financing was "at best" a proposal for discussion

- that Terrill was attempting to use the bankruptcy as a way to "start-up" the

2

company

- that Terrill had failed to adequately and accurately make disclosures required by the schedules and statement of financial affairs

- that Terrill used cash collateral without consent and, later, failed to abide by a cash collateral order

- that the internal conflicts within Terrill's board of directors was detrimental to any effort to reorganize

- that Terrill was having to relocate its operations as the stay had been lifted concerning its existing facilities and any belief on management's part that it could relocate and reconvene operations was naïve

- that ramping-up operations was not feasible

Spigner's first Rule 2016(b) Disclosure of Compensation, required by § 329(a) of the Bankruptcy Code, stated that a retainer of $37,283.00 for legal services was paid by the debtor, Terrill. Doc. No. 16. (The total retainer, apparently, was either $39,000 or $40,000.) The stated source of the retainer was not correct. The funds for the retainer were provided by Gary Rushin, Terrill's president, who had apparently borrowed the funds from another person. The 2016(b) Disclosure was not amended until after the UST raised the issue and, even with that, still does not fully disclose the source of the retainer.

Rushin was paid his salary during at least a part of the pending chapter 11 proceeding from encumbered funds and without authority from the Court for the payment.

**II.**

Establishing whether or not a retainer for debtor's counsel is property of the estate is important because it is determinative of the standard applied to granting an attorney's application for compensation. If the paid retainer is property of the estate, the stricter standard of § 330

applies to the application for compensation.[1] On the other hand, if the paid retainer is not property of the estate, § 329(b) applies to decide the reasonableness of the requested compensation.[2] A paid attorney-retainer is property of the estate if the debtor holds some interest in the funds under nonbankruptcy law. § 541(a)(1); 3 *Collier on Bankruptcy* ¶ 329.04[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).[3]

### *Types of Retainers*

The type of retainer agreement determines if the debtor holds an interest in the funds. Generally, there are three types of retainer agreements: classic retainers, security retainers, and advance payment retainers. *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005).

A classic retainer secures the availability of an attorney over a period of time, and the attorney is entitled to the money regardless of whether or not the attorney performs work for the

---

[1] (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, . . . the court may award to a . . . professional person employed under section 327 or 1103—
    (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
    (B) reimbursement for actual, necessary expenses.
. . .
    (3) In determining the amount of reasonable compensation to be awarded to a[] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

[2] (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]

[3] The interpretation of property rights related to attorney retainer agreements is governed by state law. *See Butner v. U.S.*, 440 U.S. 48, 54–55 (1979) ("Property interests are created and defined by state law."). The petition was filed in Texas by a company incorporated in Texas. Spigner is an attorney licensed in Texas and the fee paid to him was for services rendered in Texas. The applicable nonbankruptcy law is, therefore, Texas law.

client during that period of time.  *See, e.g.*, *Guffy v. DeGuerin (In re Brown Med. Ctr., Inc.)*, No. 16-0043, 2017 WL 2633533, at *3 (S.D. Tex. June 19, 2017) (discussing classic retainers).  As such, an attorney that is paid a classic retainer earns the money upon receipt of payment, and the debtor does not retain any interest in the funds.  *See id*.  Because the debtor does not retain an interest in the funds, a classic retainer is not property of the estate and falls outside the scope of § 330 and is thus subject to review under § 329.  *Countryman*, 432 F.3d at 595.

Security retainers, on the other hand, are held by the debtor's attorney to secure payment of fees for services rendered prospectively.  *Id*. at 595.  Unlike classic retainers, a security retainer remains the property of the debtor until the attorney applies the funds to charges for services actually rendered.  *Id*. at 595–96.  The debtor's interest in these funds requires their inclusion in the debtor's estate.  *Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1004 (5th Cir. 1995).  For this reason, security retainers may be applied to charges by the debtor's attorney in compliance with §§ 329 *and* 330.  *Countryman*, 432 F.3d at 596.

An advance payment or flat fee retainer is paid to the attorney for services also rendered prospectively; however, unlike the security retainer, the debtor's interest in the funds extinguishes upon remittance to the attorney.  *Id*.  This type of retainer does not become property of the estate and is subject to review under § 329 only.  *Id.* (citing *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671, 677 (Bankr. N.D. Tex. 1992)).

### *Applicable Texas Law and Local Bankruptcy Rules*

In Texas, funds received in connection with the client's representation must be held in a separate account designated as a "trust" or "escrow" account.  *Tex. Disciplinary Rules Prof'l*

*Conduct* R. 1.14(a).[4] This is true regardless of who pays the retainer, the client or a third person. *Id*. As such, the retainer remains property of the client or the third-person until the attorney applies the funds received against charges incurred as a result of the representation. *In re Dixon*, 143 B.R. at 677. Attorney retainers paid in Texas, therefore, are security retainers[5] and, if paid directly by the debtor, are property of the debtor's estate. *See In re Prudhomme*, 43 F.3d at 1004.

Funds held as a prepayment for the attorney's services are distributed accordingly upon the rendition of the anticipated service. The attorney notifies the client that the services were rendered and the fee earned; absent dispute, the attorney may then withdraw the funds from the trust or escrow account. *Tex. Disciplinary Rules Prof'l Conduct* R 1.14 cmt. 2.[6] Any portion not owed to the attorney is paid back to the entity from which the retainer was paid.

The Court's local rules require that all retainer funds paid in a chapter 11 case, "whether received from the debtor or an insider of the debtor (as defined in 11 U.S.C. § 101(31))," be placed in a trust account. N.D. Tex. L.B.R. 2016-1(b). On motion, the attorney may withdraw from the retainer if the motion complies with all procedural requirements and is noticed to all enumerated parties. *Id*. The local rule does not distinguish the type of retainer received by the debtor's attorney. Likewise, if the retainer is earned by the attorney upon receipt, its inclusion in

---

[4] "A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons . . . separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a 'trust' or 'escrow' account . . . ."

[5] This is the default rule unless the attorney and client specifically agree that the retainer is a classic or flat-fee retainer. *See In re Wilkins*, No. 09-32188-H3-13, 2010 WL 3834658, at *3–4 (Bankr. S.D. Tex. Sept. 24, 2010) (discussing the attorney's prepetition retainer agreement in which the client consented to a classic retainer fee arrangement).

[6] As done in this case, if ownership of the fee is in dispute, the attorney is to continue holding the funds in a segregated trust or escrow account pending resolution of the dispute. *See Fry v. Comm'n for Lawyer Discipline*, 979 S.W.2d 331, 333 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

the debtor's estate is not compelled by the Bankruptcy Code, "nor do the uniform national Bankruptcy Rules make any pronouncement regarding the placement of retainers in attorney trust accounts." *Countryman*, 432 F.3d at 595. Reliance, therefore, on the local bankruptcy rules is not dispositive regarding the treatment of attorney retainers. The subject retainer agreement can modify the rule's requirement to hold in trust retainers paid to a debtor's attorney. *Id*. at 596–97 (construing the retainer agreement as an advance payment for prepetition services, thereby overcoming a requirement to hold the funds in trust).[7]

### *Applicable Standard for Fee Applications*

Under § 329(b), the Court may cancel a fee agreement or order the return of fees paid if it finds that the "compensation exceeds the reasonable value of any such services" rendered by the attorney. To make this determination, courts typically compare the amount of compensation requested or paid with the services provided or that will be provided under the agreement. *See Pope v. Knostman (In re Lee)*, 884 F.2d 897, 899–900 (5th Cir. 1989). The applicant requesting compensation bears the burden of proof under § 329. *In re Healey*, No. 15-60471, 2016 WL 4249897, at *5 (Bankr. E.D. Tex. Aug. 8, 2016) (quoting *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 902 (B.A.P. 9th Cir. 2016)).

Section 329 does not address retainers, but compensation paid to an attorney in contemplation of or in connection with bankruptcy is reviewable by the Court even if paid by a third party. *See In re Netoche Brigham Fair*, No. 15-33400-SGJ-13, 2016 Bankr. LEXIS 2043, at *45 (Bankr. N.D. Tex. May 18, 2016) ("[Section 329] provisions apply to every attorney employed by every debtor in every chapter [of the Bankruptcy Code], regardless of the purpose

---

[7] The court in *Countryman* recognized the significance of its analysis as it related to Chapter 11 debtor attorneys that receive advance payment for extensive prepetition work. It went on to note that "the protections of Section 329 remain an effective policing device for such payments." *Countryman*, 432 F.3d at 596, n. 5.

7

for which the attorney is retained, and notwithstanding the fact that an attorney will not be seeking formal employment by, nor compensation from, the bankruptcy estate."). Consistent with § 329(b), the Court is permitted to return to the entity that made such payment an amount of funds for which it deems unreasonable. The language of § 329(b) contemplates that the source of compensation might come from an entity other than the debtor.

The Court may also award reasonable compensation to a debtor's attorney under § 330 for actual, necessary services rendered and reimbursement for actual, necessary expenses. To determine the reasonableness of compensation, the Court looks to a non-exhaustive list of factors contained in § 330(a)(3).[8] The requested compensation may also be disallowed or reduced and the Court may order disgorgement of fees in its examination of a fee application.

There is no presumption that an attorney is entitled to its requested fees, and the applicant must prove that the requested fees are reasonable. *See In re O'Connor*, No. 99-36662-SAF-7, 2004 Bankr. LEXIS 208, at *5–6 (Bankr. N.D. Tex. Feb. 24, 2004). *See also Garb v. Marshall (In re Narragansett Clothing Co.)*, 210 B.R. 493, 499 (B.A.P. 1st Cir. 1997). A detailed submission of the attorney's time records, coupled with an analysis of the § 330(a)(3) factors, allows the Court to assess whether the requested fees are reasonable. *See Transamerican Nat. Gas Corp. v. Zapata P'ship (In re Fender)*, 12 F.3d 480, 487–88 (5th Cir. 1994) (describing a hybrid approach of using the lodestar method to calculate attorney's fees by multiplying the hours expended by a reasonable hourly rate and then adjusting that number in consideration of the factors addressed in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which, in some respects, were later codified in § 330(a)(3) by a 1994 congressional amendment to the Code).

---

[8] *Supra* note 1.

In its most recent opinion related to the award of attorney's fees under § 330, the Fifth Circuit prescribed a "prospective, reasonably likely to benefit the estate standard" that courts should use when analyzing § 330(a)(3)(C) and (a)(4)(A).[9] *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 268 (5th Cir. 2015) (internal quotation omitted). The court's ruling instructed that attorney compensation should be adjudged for its reasonableness and necessity at the time the service is rendered. *Id*. at 276. In doing so, many factors are considered, including:

> the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor).

*Id*. While not dipositive, the Court could also consider the success of a particular action in awarding attorney compensation. *Id*. In sum, the Court is afforded "broad discretion to award or curtail attorney's fees under § 330, 'taking into account all relevant factors.'" *Id*. at 277 (quoting 11 U.S.C. § 330(a)(3)).

### III.

### A.

According to the most recently amended Statement of Financial Affairs and Disclosure of Compensation, a $40,000 retainer was provided to Spigner, not by the debtor, Terrill, but by a principal of Terrill, Mr. Rushin, who "paid" the retainer. At the hearing, Spigner raised in his opening argument that he received a wire transfer of the funds from a family member of Mr.

---

[9] *Id.* (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
    (i) unnecessary duplication of services; or
    (ii) services that were not—
        (I) reasonably likely to benefit the debtor's estate; or
        (II) necessary to the administration of the case.

Rushin's. He went on to explain that he did not know the terms of the arrangement between Mr. Rushin and this family member because, he contends, there was no need for him to know. The UST does not agree with this assertion.

The retainer paid to Spigner is not property of the estate.[10] This is true regardless of the type of retainer agreement entered into between Spigner's firm and Terrill because the funds were not paid by the debtor.[11] Regardless, the Court retains jurisdiction over the funds because the source of the retainer is not considered when approving or denying a fee application. And the Court looks principally to the more relaxed standard of reasonableness under § 329, rather than § 330, in deciding whether to award the requested compensation to Spigner.

The applicant, Spigner, bore the burden of proving that his fees were reasonable. In support of his position, Spigner submitted an invoice reflecting the time spent on various matters related to the case and the amounts charged for that time.[12] The UST does not dispute the amount of time expended or challenge the rates charged.

**B.**

There are many failings in this case. This case, simply stated, was never a viable prospect for chapter 11. The Court did acknowledge, however, in its ruling on the UST's motion to convert, that, given the dire circumstance of the case at the outset—the loss of critical employees and the sheer magnitude of the obligations faced by a chapter 11 debtor, especially at the outset—Rushin was no doubt overwhelmed by his responsibilities. He was desperate and

---

[10] There is less clarity regarding an ownership interest in the disputed funds, particularly because they were paid by a family member of Mr. Rushin. There is no evidence in the record suggesting that the family seeks repayment for the amount given to Mr. Rushin. Similarly, there is no evidence in the record of Mr. Rushin's intent to seek reimbursement from the debtor's estate for the amount paid to Spigner.

[11] A written fee agreement was not submitted into evidence and has not been filed with the Court.

[12] Spigner's Ex. 2.

10

looked to Spigner for help. It is, in addition, fair to assume that Spigner, at least at the outset of the case, may not have fully appreciated Terrill's situation.

Terrill filed this case under chapter 11 on September 20, 2016. It was filed in the wrong district and division—the San Antonio division of the Western District of Texas—and then transferred here. Shortly after the transfer, Terrill attempted to recover over $600,000 that was seized by its lender before the bankruptcy was filed. The Court denied this request by its Memorandum Opinion and Order of October 14, 2016. Had such funds been recovered, they may have provided Terrill with some capital to go forward in a chapter 11 case. Failing that request, however, doomed Terrill as a viable chapter 11 case. Despite this, Terrill continued to oppose the UST's motion to convert and, in doing so, proposed nothing more than a vague possibility of financing sometime in the future. This only served to further delay the inevitable and to drive-up the expenses associated with administering this case.

Spigner's fee application covers the period from September 22, 2016 to December 16, 2016; it does not identify who provided the work. It reflects that 132.58 hours were expended at rates of $450 an hour, presumably for Spigner's services, and $200 an hour. This includes sixteen hours at the rate of $450.00 an hour for travelling to San Angelo and Lubbock for hearings. (The Court's guidelines allow travel time at half counsel's rate.) He submits that his full rate for travel is proper as no charge is made for other counsel that travelled to and appeared for the hearings. This may be a fair point, but it is not an acceptable way to maintain and disclose fees and expenses for a fee application. All attorneys and other professionals that work on the case should be reflected. Full and accurate disclosures are required where called for in a bankruptcy case.

This case was initially filed in the wrong division, cash collateral was used without

consent or authority, and the schedules had to be amended multiples times. This case was not well handled.

## C.

Spigner argues that because the retainer was paid by a third party and thus was funded with non-estate funds, the Court really has no authority over how the retainer is used. He refers to two cases to support his argument, *Palmer & Palmer P.C. v. United States Tr. (In re Hargis)*, 887 F.2d 77 (5th Cir. 1989) and *In re Martinez*, 293 B.R. 387 (Bankr. N.D. Tex. 2003). These cases do not support Spigner.

First, in *Hargis*, attorneys for the debtors were paid from life insurance proceeds resulting from the death of one of the co-debtors. *In re Hargis*, 887 F.2d at 78. The attorneys did not, however, comply with any of the Code provisions regarding notice and disclosure of attorney compensation. *Id*. As a result, the bankruptcy court ordered complete disgorgement of the fees, disqualified the attorneys from the pending bankruptcy, assessed sanctions, and dismissed the bankruptcy. *Id*. The district court upheld the fee disgorgement but reversed the imposition of sanctions. *Id*.

On appeal, the Fifth Circuit analyzed the disgorgement under § 549(a), which provides the court the authority to avoid post-petition transfers of property of the estate. *Id*. at 79. Because the life insurance proceeds used to pay the debtors' attorneys were not property of the estate, the court held that disgorgement was improper. *Id*. at 79–80. To reach this decision, the court distinguished cases cited by the trustee, "either because they involved payment from the estate or because they concerned situations in which *section 329 was found specifically applicable*." *Id*. at 79 (emphasis added). The applicability of § 329 to Spigner's fee application is specifically required by a plain reading of the statute. To hold to the contrary, simply because

the retainer was paid from funds that are not property of the estate, renders § 329(b) superfluous.[13]

Second, Spigner cites this Court's decision in *In re Martinez*, 293 B.R. 387 (Bankr. N.D. Tex. 2003). In *Martinez*, the debtors' attorney and an attorney that represented the debtors in a state-court personal injury action sought approval and disbursement of the personal injury settlement that included an award of attorney compensation to both attorneys. *Id*. at 388–89. The debtors' schedules listed the pending litigation as an asset and claimed a 100% exemption to the contingent and unliquidated amount of any award under the litigation. *Id*. at 388. Holding that the Court lacked jurisdiction over the settlement amount, the Court found that the settlement proceeds were not property of the estate. *Id*. at 390–92. While initially the litigation claim was an asset of the estate, the debtors' exemption of 100% of that claim, and the lack of objection to this exemption, supported the Court's finding that no amount of the settlement proceeds was property of the estate. *Id*. at 391.

*Martinez* dealt with exempt settlement proceeds. To reiterate, professional compensation, regardless of its source, is administered in accordance with § 329. The Court in *Martinez* expressly declined to address the "propriety of the proposed distribution of the proceeds." *Id*. at 392. Had the Court ordered a distribution of the settlement proceeds, it could not have done so without first deciding whether the requested compensation exceeded the reasonable value of the services provided to the debtors by their counsel. § 329(a)–(b).

Last and most important, Spigner requests approval of over $54,000, an amount that exceeds the retainer. If approved, payment would have to be made partly from estate funds.

---

[13] Section 329(b) does not distinguish between compensation that is or is not property of the estate, rather it refers to "such compensation." Likewise, § 329(a) contains no similar distinction and requires disclosure of compensation from any source whatsoever. The Court, therefore, has the authority to reduce or cancel compensation agreements and order a return of funds "to the entity that made such payment."

## IV.

### The Order

Section 329(b) provides that the fees must not exceed the reasonable value of the services provided. The Court outlined at its ruling on the UST's motion to convert—held three months after the case was filed—that the evidence supporting conversion was "overwhelming." Terrill had no operations and no prospect of a reorganization. Both Terrill and Spigner failed to adequately meet their disclosure requirements. Transparency through disclosure is of paramount importance in a bankruptcy case. Well before the December hearing, both Rushin (for Terrill) and Spigner should have realized that Terrill was not a viable chapter 11 case. They presented *no* evidence of any prospect for reorganization or sale.

The Court does not agree with the UST, however, that no fees should be awarded. It is not fair to second guess Terrill's decision, presumably with Spigner's advice, to file chapter 11. Nor is it fair to disallow fees for the services provided in the early stages of the case. Accordingly, the Court concludes that $20,000 for fees and the $5,397.29 of expenses are reasonable. Such amount may be paid from the retainer to Spigner. The balance of the retainer shall be returned to the person or entity that provided the funds; the Court does not address the rights to the returned funds as among Spigner, Rushin, and the person who originally provided the funds. Spigner is directed to file a certificate with the Court certifying his return of the balance of the funds and to whom they were returned.

SO ORDERED.

### End of Memorandum Opinion and Order ###